HASTINGS et al., Respondents, *v.* WISE et al., Defend-
ants; KELLER, Appellant.

(No. 6,876.)

(Submitted January 13, 1932. Decided February 13, 1932.)

[8 Pac. (2d) 636.]

*Mr. Merle C. Groene,* for Appellant, submitted a brief; *Mr. Groene* and *Mr. Henry C. Smith,* of Counsel, argued the cause orally.

*Mr. Wm. M. Blackford* and *Messrs. Murphy & Whitlock,* for Respondents, submitted a brief; *Mr. A. N. Whitlock argued* the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiffs, as owners and holders of twenty-one real estate mortgages executed by Cook-Reynolds Company, and covering lands situated in Judith Basin county, brought this action to foreclose the mortgages.

The mortgages are dated April 1, 1909, and are identical in form and substance, except as to the amount of the indebtedness secured and the description of the property. Each mortgage secured six promissory notes executed by the mortgagor, each of which matures at a different date, the due date of the last maturing note secured by each mortgage being April 1, 1919. The notes were made payable to William O. Straw and the mortgages were executed to him.

On September 1, 1910, the Cook-Reynolds Company conveyed the property to defendant Wise, subject to the mortgages. By warranty deed dated February 26, 1927, Wise conveyed the lands to his sister, Edna W. Keller, appellant here, the deed not being recorded until September 9, 1929. This deed recited: "This property is conveyed subject to all existing mortgages and liens of record."

After the execution and delivery of the notes some of them were assigned to Agnes H. Straw, and she became the owner of the remainder under the terms of the will of her husband, William O. Straw. Plaintiffs, as beneficiaries under the will of Agnes H. Straw, deceased, have become the owners of the notes and mortgages.

On January 13, 1919, Agnes H. Straw, being then the owner of the notes and mortgages, made a formal agreement with Wise, who was then the owner of the land, by the terms of which the respective dates of maturity of all of the notes were extended for a period of ten years from and after April 1, 1919. This agreement was duly acknowledged. It was duly recorded on July 23, 1929. By the terms of that agreement defendant Wise assumed and agreed to pay the mortgage indebtedness represented by the notes, together with interest. It then provided, "that this instrument is for the purpose of avoiding the necessity of a renewal of said respective mortgages and shall operate and have the effect of the execution and delivery of new mortgages securing said respective sums of money." Defendant Wise paid interest on the notes until April, 1926, and nothing since.

When appellant Edna W. Keller took the deed to the property she had no knowledge of the extension agreement. She alleged in her verified answer that she became the owner of the land on the twenty-fifth day of February, 1927, but Wise testified that the deed was not actually delivered to her until in December, 1927; but when he was asked, "When did you say you transferred to her this land?" he said, "On the date it is conveyed in the deed." There was sufficient evidence to warrant a finding that there was constructive delivery of the deed at the moment it was executed. (Sec. 6848, Rev. Codes 1921.) At the time the deed to her was executed, the only mortgages of record were those set out in the complaint.

The court, sitting without a jury, found in favor of plaintiffs, and defendant Edna W. Keller appealed.

The question presented by the appeal is whether the extension agreement takes priority over appellant's deed. Her con-

tention is that it does not because of sections 8243, 8267 and 9029, Revised Codes of 1921. The question was properly raised by attacking the sufficiency of the complaint and by objection to the introduction in evidence of the extension agreement. Were these the only statutes on the subject, the contention would have merit in view of the holding in the case of *Morrison* v. *Farmers' etc. State Bank*, 70 Mont. 146, 225 Pac. 123. But section 8267 is not the only statute under which a mortgage may be extended. Section 8264, Revised Codes of 1921, provides: "A mortgage of real property can be created, renewed, or extended, only by writing, with the formalities required in the case of a grant of real property." On the former appeal in this case (*Hastings* v. *Wise*, 89 Mont. 325, 297 Pac. 482, 485) we said: "When the defendant Keller received deed for the property, she took it chargeable with knowledge of the existence of the mortgages and that they might be extended by a compliance with the provisions of either section 8267 or 8264."

The case of *O. M. Corwin Co.* v. *Brainard*, 80 Mont. 318, 260 Pac. 706, sustains the right of the parties to a mortgage by their joint act to extend it under section 8264, without regard to section 8267, where the rights of third parties are not affected.

In *Vitt* v. *Rogers*, 81 Mont. 120, 262 Pac. 164, 167, the right to extend the life of a mortgage while still alive, under section 8264, was held to exist, even though prior thereto the rights of third parties attached. In that case this language was used: "When the subsequent mortgagees took their mortgages in June, 1920, plaintiff's mortgage was valid and subsisting. They knew plaintiff might foreclose it at some time before the end of the eight-year period, and that he might extend it for a further period of eight years. It is not reasonable to suppose that defendants, when they took their mortgages, contemplated the possibility that plaintiff would fail to foreclose his mortgage or would let it lapse by failure to renew it. They must have contemplated that the plaintiff would get his money before they could get theirs. If he

foreclosed his mortgage and caused the land to be sold in satisfaction of the judgment, they would have to exercise the right of redemption given them by statute in order to save the land for the satisfaction of their own mortgages. When the mortgagors and plaintiff extended the maturity of the debt to a date within the eight-year period and plaintiff commenced his action to foreclose the mortgage within two years of the new maturity date, we fail to see how the defendants were injured in any way. We do not see that they are in a worse position than the one they were in when they took their second mortgages. The burden resting upon them now is no heavier than it was then. They are asking an advantage which will come to them if plaintiff's mortgage is wiped out, but they do not show that they have in any manner been placed at any disadvantage. The equities are not with but against them. The mortgagors and plaintiff were privileged to extend the time of payment of the debt due plaintiff and to renew or extend the mortgage if by so doing they did not injure third persons; that is clear. (*O. M. Corwin Co.* v. *Brainard,* supra.) It does not appear that the defendants have been injured in any way. Their counsel does not even advance that argument. His main reliance is upon the *Morrison Case."* The only substantial difference between that case and this is that there the extension agreement was placed of record before the expiration of the time as extended, though after the rights of the third party had been acquired and placed of record.

The extension agreement here involved was made before ▌ but not recorded until after the original maturity of the last maturing note secured by the mortgages. It was not recorded until after the lapse of the time embraced in the extension agreement, but was recorded before appellant's deed was placed of record. It affected the title to real property, and hence was a "conveyance" as that term is defined in section 6936, Revised Codes of 1921. As between the parties to it, it was valid. (Sec. 6938, Id.) The recording of the extension agreement was necessary only for the protection of

subsequent purchasers or encumbrancers. By section 6935, Id.,
it is provided: "Every conveyance of real property * * *
is void against any subsequent purchaser or encumbrancer,
* * * in good faith and for a valuable consideration, whose
conveyance is first duly recorded."

Bearing in mind that the extension agreement was recorded
 before Keller's deed was placed of record, it takes
precedence over the deed, even though we assume that appel-
lant Keller was a subsequent purchaser in good faith and for
a valuable consideration. We may say, in passing, that there
is respectable authority holding under the facts here, that
appellant, who took her deed while the mortgages were valid
and subsisting and took it subject to those mortgages, is not
a "subsequent purchaser" within the meaning of recording
statutes. (*Bliss* v. *Redding,* 121 Neb. 69, 236 N. W. 181;
*Tynon* v. *Bliss,* 121 Neb. 80, 236 N. W. 184; *Wilkinson* v.
*National Bank of Crosbyton,* 118 Tex. 202, 13 S. W. (2d)
346; *T. A. Hill State Bank* v. *Schindler,* (Tex. Civ. App.)
33 S. W. (2d) 833; and see *Turner* v. *Powell,* 85 Mont. 241,
278 Pac. 512.) And it is not sufficient that she was a mere
creditor of the grantor. (*Short* v. *Karnop,* 84 Mont. 276, 275
Pac. 278.)

But for the purpose of this case we may assume that she
██ ██ is a subsequent purchaser in good faith and for a
valuable consideration within the meaning of section 6935.
Her deed is still not entitled to priority over plaintiff's mort-
gages, as extended, because under section 6935 a conveyance
(here the extension agreement) is void as against those only
who meet both conditions, viz.: (1) That they are purchasers
or encumbrancers in good faith and for a valuable considera-
tion; and (2) that their conveyance is first duly recorded.
The clear implication is that, unless both of these requirements
are met, the first conveyance is valid. The adjudicated cases
under statutes similar to ours support this conclusion.

In *Butler* v. *Bank of Mazeppa,* 94 Wis. 351, 68 N. W. 998,
999, in discussing this question under similar statutes, the
court said: "The bank, then, was a subsequent purchaser in
good faith, within the meaning of the recording Act. But,

in order to be protected against a prior conveyance or mortgage, it must be something more than a subsequent purchaser in good faith. Its conveyance must first be duly recorded.''

Under identical statutes in California, the supreme court of that state, in *Thomas* v. *Vanlieu*, 28 Cal. 617, had this to say: ''In order to bring himself within the provisions of that section, a party must show not only that he is a purchaser in good faith and for a valuable consideration, but he must show that his conveyance was first duly recorded.'' In the later case of *Commercial Bank* v. *Pritchard*, 126 Cal. 600, 59 Pac. 130, 132, the court adhered to the same ruling and said: ''The court found that respondent was a purchaser for a valuable consideration without notice. It has been shown that the lease was a conveyance; that it had been assigned to appellant as security for the note of Pritchard. It was therefore incumbent upon respondent to show, not only that he was a subsequent purchaser for a valuable consideration, but that his conveyance was first duly recorded.''

Under statutes of like import in the state of Illinois, the same conclusion has been reached in *Simmons* v. *Stum*, 101 Ill. 454, where the court said: ''Conceding, then, that appellant purchased the mortgaged premises without notice of the existence of complainant's mortgage, if she failed to record her deed until after March 15, 1879, the date of the record of the mortgage, the deed would stand subordinate to the prior lien of the mortgage. Under our recording laws, the instrument first on record takes priority. (*Brookfield* v. *Goodrich*, 32 Ill. 363.)''

In recognition of the same principle, under like statutes, the court, in *Blair State Bank* v. *Stewart*, 57 Neb. 58, 77 N. W. 370, 371, said: ''That the mortgages were valid between the parties thereto from the date of their execution will, of course, be conceded. And, under the provisions of the section quoted, it is perfectly plain that they were not void as to creditors generally, but only as to creditors whose deeds, mortgages, or other instruments should be first recorded.'' The following cases take the same view under statutes either identical or

substantially the same as ours: *Adams* v. *Satterberg*, 46 Idaho, 271, 267 Pac. 445; *Spencer* v. *Steward*, 37 Idaho, 610, 218 Pac. 369; *Whiteside* v. *Watkins*, (Tenn. Ch. App.) 58 S. W. 1107; *Fleschner* v. *Sumpter*, 12 Or. 161, 6 Pac. 506; *Hibernia Savings & Loan Society* v. *Farnham*, 153 Cal. 578, 126 Am. St. Rep. 129, 96 Pac. 9; *Rumery* v. *Loy*, 61 Neb. 755, 86 N. W. 478; and see note in 32 A. L. R. 344, and our own cases of *Sheldon* v. *Powell*, 31 Mont. 249, 107 Am. St. Rep. 429, 78 Pac. 491, and *Angus* v. *Mariner*, 85 Mont. 365, 278 Pac. 996.

The case of *Marling* v. *Nommensen*, 127 Wis. 363, 115 Am. St. Rep. 1017, 7 Ann. Cas. 364, 5 L. R. A. (n. s.) 412, 106 N. W. 844, has been pressed upon our attention, but since the Keller deed was expressly made subject to the mortgages, this case does not come within the facts of that case. Also, as pointed out in the note in 7 Ann. Cas. 367, that case is contrary to the adjudicated cases elsewhere.

The court properly held that defendant Keller's deed is subject to the mortgages held by plaintiffs, as extended by the agreement, and the judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and MATTHEWS concur.